**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| NIV KALISKY P/K/A "EARLY YELLOW",<br><br>Plaintiff,<br><br>- against -<br><br>JACQUES BERMON WEBSTER II P/K/A "TRAVIS SCOTT"; CALEB ZACKERY TOLIVER P/K/A "DON TOLIVER"; KHADIMOU RASSOUL CHEIKH FALL P/K/A "SHECK WES"; MICHAEL GEORGE DEAN P/K/A "MIKE DEAN"; JAMES AUSTIN CYR P/K/A "LONDON CYR"; JULIUS ALEXANDER BROWN P/K/A "JENIUS"; SONY MUSIC ENTERTAINMENT; SONY MUSIC ENTERTAINMENT D/B/A EPIC RECORDS; CACTUS JACK RECORDS, LLC; LAFLAME ENTERPRISES, INC.; and LONDON CYR PRODUCTIONS INC.<br><br>Defendants. | **COMPLAINT**<br><br>Index No. ___________<br><br>**JURY TRIAL REQUESTED** |

Plaintiff Niv Kalisky p/k/a "Early Yellow" (the "Plaintiff" or "Early Yellow") by and through his undersigned attorneys, Justin Jacobson Law, P.C. and The Royalty Law Firm PLLC, as for his Complaint against Defendants JACQUES BERMON WEBSTER II professionally known as "TRAVIS SCOTT" ("TRAVIS SCOTT"); CALEB ZACKERY TOLIVER professionally known as "DON TOLIVER" ("DON TOLIVER"); KHADIMOU RASSOUL CHEIKH FALL professionally known as "SHECK WES" ("SHECK WES") (collectively "JACKBOYS"); MICHAEL GEORGE DEAN professionally known as "MIKE DEAN" ("MIKE DEAN"); JAMES AUSTIN CYR professionally known as "LONDON CYR" ("CYR"); JULIUS ALEXANDER BROWN professionally known as "JENIUS" ("JENIUS"); SONY MUSIC ENTERTAINMENT ("SME"); SONY MUSIC ENTERTAINMENT D/B/A EPIC RECORDS ("EPIC"); CACTUS JACK RECORDS, LLC ("CACTUS JACK"); LAFLAME

Doc ID: 5d1d6bd803d4842e0e03398ada3536ab67102e7d

ENTERPRISES, INC. (“LAFAME”); and LONDON CYR PRODUCTIONS INC. (“CYR PRODUCTIONS”) (hereinafter collectively referred to as the “Defendants”), respectfully alleges upon knowledge as to its own acts and upon information on the acts of others, as follows:

## I. NATURE OF ACTION

1. The importance of protecting the maker of an original artistic work and properly incentivizing creatives through fair and just compensation combined with the enforcement of their exclusive rights in their copyrighted work is deeply engrained within the U.S. Constitution and further supported under the U.S. Copyright Act. Due to these established principles, a party that spends their resources, talents, and time to fashion an original work, such as a musical composition or recording, anticipates receiving compensation for any commercial usage of it especially by a third-party. However, sadly, many producers of original sound recordings are denied this constitutionality guaranteed right in those sound recordings due to the wrongful actions of individual musicians and/or their licensees including their recording artists, recording labels, music publishers, and/or music distribution companies failing to secure the proper rights to another’s copyrighted work as well as by not providing just, or in some cases, any compensation at all, for the commercial exploitation and monetization of that copyrighted work.
2. Even worse is the situation at bar, where even after receiving numerous written notices, electronic mail correspondences, and engaging in extensive back and forth conversations for years with two different attorneys in different countries, substantial compensation is still due for the unauthorized sampling and usage of Plaintiff’s protected work in the sound recording that was incorporated into a highly successful song. In fact, the song was part of an album that debuted at Number 1 on the prestigious musical charts, the

"Billboard 200" album charts. Specifically for nearly seven (7) years, the musicians and their licensees continue to infringe the author's rights in the creation by the ongoing and uncompensated commercial exploitation and monetization of another's protected work amassing global notoriety and coverage in half a dozen major press and media outlets in addition to earning hundreds of millions of paid sales from both physical items as well as through digital streams, downloads, plays, views, and other monetized transactions while providing nothing to the exclusive rights holder of the sound recording wrongfully incorporated into the song without compensation for the use of that sound recording.

3. Accordingly, the business model of utilizing the valuable intellectual property owned by the Plaintiff without paying or negotiating proper licensing has been an extremely lucrative practice for the Defendants who continue with its willful unauthorized usage and monetization of the Plaintiff's protected work despite receiving several notices of breaches and even after valid "takedown" notices were filed by the Plaintiff. In fact, to continue to perpetuate this unlawful action, the Defendants filed counternotices to fraudulently dispute the validly issued "takedown" notices submitted by the Plaintiff to permit the Defendants to continue its illegal monetization scheme further violating the creator's rights in the protected work.

4. Despite the Defendants' continued unauthorized exploitation of the Plaintiff's work without compensation for several years, the Plaintiff reached out to the Defendants several times to attempt to negotiate and reach an agreement to receive the owed compensation as for the wrongful inclusion of the Plaintiff's protected work in the disputed song without any resolution or good faith efforts by the Defendants to remedy the sound recording dispute.

5. The law does not permit the kind of continuous and uncompensated infringement that the Defendants have committed. This action seeks to hold them responsible for actual damages and profits recoverable by law for the unlawful usage and monetization of the Plaintiff's uniquely valuable work as well as the Defendants' other enumerated violations.

## II. JURISDICTION AND VENUE

6. The Court has subject matter jurisdiction under 28 U.S.C. § 1331 and 1338(a) because this action arises under the Copyright Act of 1976, 17 U.S.C. § 101, *et seq* and the Declaratory Judgment Act 28 U.S.C. §§ 2201.

7. This Court has personal jurisdiction over the Defendants under 17 U.S.C. § 512(g)(3)(D) due to the Defendants submitting a counter-notification in response to the Plaintiff's "takedown" notice under the DMCA.

8. This Court also has personal jurisdiction over the Defendants because they have purposefully availed themselves of the privileges of conducting business in New York and the Defendants have directed their activities and marketing of the infringing sound recording to New York residents, i.e., New York residents are able to purchase, download, and stream the infringing sound recording.

9. The Defendants have engaged in systematic and continuous business activities relating to the infringing sound recording. As such, the Defendants have engaged in continuing business activities in the instant jurisdiction including the marketing, sales, and licensing of the infringing sound recording within the District. Venue is proper in this District under 28 U.S.C. § 1400(a) because Defendants SME and Epic Records both reside in this District. Venue is also proper because a substantial part of the events giving rise to the

claims occurred in this District, 28 U.S.C. § 1391(b)(2).

10. The Defendants are, at a minimum, constructively aware of their continuous and substantial commercial interactions with New York residents.

11. Defendant Michael George Dean professionally known as "MIKE DEAN" is alleged to be a resident of the State of New York, so he is subject to personal jurisdiction in this District, he has performed in New York, and he and the other Defendants have authorized, organized, and promoted performances of the infringing sound recording numerous times in New York, as well as throughout the United States.

12. Defendant Sony Music Entertainment is a Delaware general partnership with a principal place of business located in New York, so they are subject to personal jurisdiction in this District, and they have committed unlawful acts of infringement in this District.

13. Defendant Sony Music Entertainment, Inc. d/b/a Epic Records is a Delaware general partnership with a principal place of business located in New York, so they are subject to personal jurisdiction in this District, and they have committed unlawful acts of infringement in this District

14. The Defendants have generated recording revenues and other attributable income from the unauthorized and unlawful exploitation of the infringing sound recording, including receiving substantial revenue from such exploitation in New York, as well as throughout the United States. The Defendants have advertised the infringing sound recording to New York residents, as well as throughout the United States.

15. The Defendants, individually and collectively, have generated substantial revenue from the exploitation of the infringing sound recording in New York, and throughout the United States.

## III. THE PARTIES

16. Plaintiff Niv Kalisky p/k/a "Early Yellow" is an Israeli citizen ("Early Yellow"). Early Yellow creates original musical works and promotes and distributes original musical compositions and sound recordings as well as licenses original musical works to third parties such as record labels, musicians, and motion picture and television studios including those in New York.

17. Upon information and belief, Defendant Jacques Bermon Webster, II professionally known as "TRAVIS SCOTT" ("TRAVIS SCOTT") is a resident of the State of Texas, residing at 12710 Tenaya Falls Drive, Cypress, TX 77429 and c/o Kia Kamran P.C., 1900 Avenue Of The Stars, 25th Floor, Los Angeles, CA 90067, or wherever this Defendant may be found, and in any event, TRAVIS SCOTT regularly conducts business in New York. TRAVIS SCOTT is a musical artist who contracts with other musical producers and composers to create original musical compositions for him to perform such as Early Yellow. Upon information and belief, TRAVIS SCOTT distributed and commercially licensed the Infringing Work, including copies embodying the Registered Sample, and coordinated its marketing and sales in New York and throughout the United States. He has generated considerable revenue from the exploitation of the infringing sound recording in New York, and throughout the United States. Upon further information and belief, TRAVIS SCOTT entered into contracts with the other Defendants which authorized and caused the widespread exploitation of the infringing sound recording in New York, and throughout the United States.

18. Upon information and belief, Defendant Caleb Zackery Toliver professionally known as "DON TOLIVER" ("DON TOLIVER") is a resident of the State of California and

residing at 2559 Alicante Court, Santa Rosa Valley, CA 93012, and in any event, DON TOLIVER regularly conducts business in New York. DON TOLIVER is a musical artist who contracts with other musical producers and composers to create original musical compositions for him to perform such as Early Yellow. Upon information and belief, DON TOLIVER distributed and commercially licensed the Infringing Work, including copies embodying the Registered Sample, and coordinated its marketing and sales in New York and throughout the United States. He has generated considerable revenue from the exploitation of the infringing sound recording in New York, and throughout the United States. Upon further information and belief, DON TOLIVER entered into contracts with the other Defendants which authorized and caused the widespread exploitation of the infringing sound recording in New York, and throughout the United States.

19. Upon information and belief, Defendant Khadimou Rassoul Cheikh Fall professionally known as "SHECK WES" ("SHECK WES") is a resident of the State of New Jersey, residing at 75 Glen Avenue, West Orange, NJ 07052, and in any event, SHECK WES regularly conducts business in New York. SHECK WES is a musical artist who contracts with other musical producers and composers to create original musical compositions for him to perform such as Early Yellow. Upon information and belief, SHECK WES distributed and commercially licensed the Infringing Work, including copies embodying the Registered Sample, and coordinated its marketing and sales in New York and throughout the United States. He has generated considerable revenue from the exploitation of the infringing sound recording in New York, and throughout the United States. Upon further information and belief, SHECK WES entered into contracts with the

other Defendants which authorized and caused the widespread exploitation of the infringing sound recording in New York, and throughout the United States.

20. Upon information and belief, Defendants TRAVIS SCOTT, DON TOLIVER, and SHECK WES are part of a musical group or musical act known as and performing as "*Jackboys*" (collectively "JACKBOYS").

21. Upon information and belief, Defendant Michael George Dean professionally known as "MIKE DEAN" ("MIKE DEAN") is a resident of the State of New York, residing at 80 Varick Street, Apt #10F, New York, NY 10013, and in any event, MIKE DEAN regularly conducts business in New York. MIKE DEAN is a Grammy-winning musical producer who has worked some of the world's largest acts and who contracts with other musical artists, producers and composers to create original musical compositions and sound recordings with other individuals such as Early Yellow. Upon information and belief, MIKE DEAN distributed and commercially licensed the Infringing Work, including copies embodying the Registered Sample, and coordinated its marketing and sales in New York and throughout the United States. He has generated considerable revenue from the exploitation of the infringing sound recording in New York, and throughout the United States. Upon further information and belief, MIKE DEAN entered into contracts with the other Defendants which authorized and caused the widespread exploitation of the infringing sound recording in New York, and throughout the United States.

22. Upon information and belief, Defendant James Austin Cyr professionally known as "LONDON CYR" ("CYR") is a citizen of Canada and allegedly residing at 1701 Richardson Street, Victoria, British Columbia V8S 1R6 Canada, and in any event, CYR

regularly conducts business in New York. CYR is a multi-Platinum musical producer who contracts with other musical artists, producers and composers to create original musical compositions and sound recordings with other individuals such as Early Yellow and TRAVIS SCOTT. Upon information and belief, CYR distributed and commercially licensed the Infringing Work, including copies embodying the Registered Sample, and coordinated its marketing and sales in New York and throughout the United States. He has generated considerable revenue from the exploitation of the infringing sound recording in New York, and throughout the United States. Upon further information and belief, CYR entered into contracts with the other Defendants which authorized and caused the widespread exploitation of the infringing sound recording in New York, and throughout the United States is a music producer.

23. Upon information and belief, Defendant Julius Alexander Brown professionally known as “JENIUS” (“JENIUS”) is a citizen of Canada and residing at 715 Grandview Street North, Unit 46, Oshawa, Ontario L1K 0N2, Canada, and in any event, JENIUS regularly conducts business in New York. GENIUS is a notable musical producer who contracts with other musical artists, producers and composers to create original musical compositions and sound recordings with other individuals such as Early Yellow and TRAVIS SCOTT. Upon information and belief, JENIUS distributed and commercially licensed the Infringing Work, including copies embodying the Registered Sample, and coordinated its marketing and sales in New York and throughout the United States. He has generated considerable revenue from the exploitation of the infringing sound recording in New York, and throughout the United States. Upon further information and belief, JENIUS entered into contracts with the other Defendants which authorized and

caused the widespread exploitation of the infringing sound recording in New York, and throughout the United States is a music producer.

24. Upon information and belief, Defendant Sony Music Entertainment ("SME") is a Delaware general partnership with a principal place of business at 25 Madison Avenue, New York, NY 10010. SME's registered agent is CORPORATION SERVICE COMPANY at 251 Little Falls Drive, Wilmington, DE 19808. Upon information and belief, SME distributed and commercially licensed the Infringing Work, including copies embodying the Registered Sample, and coordinated its marketing and sales in New York and throughout the United States. SME has published, distributed, and/or advertised and continues to publish, distribute, and/or advertise TRAVIS SCOTT and JACKBOY's songs including the infringing sound recording in New York, and throughout the United States. SME has generated substantial revenue from the exploitation of the infringing sound recording in New York, and throughout the United States. Upon further information and belief, SME entered into contracts with the other Defendants which authorized and caused the widespread exploitation of the infringing sound recording in New York, and throughout the United States. SME arranged for the distribution and commercial licensing of the infringing sound recording and SME is responsible for coordinating, among other things, the marketing, licensing, promotion, and sales of the infringing sound recording in New York, and throughout the United States. Upon information and belief, SME conducts systematic and continuous business in this District including having its principal place of business in New York and SME has generated substantial revenue from the exploitation of the infringing sound recording in this District. SME has previously and continues to offer for sale and has caused others to offer

for sale the infringing sound recording in New York, and throughout the United States. SME has sold and benefitted and continues to sell and benefit from the sale and commercial exploitation of the infringing sound recording in New York, and throughout the United States.

25. Upon information and belief, Sony Music Entertainment, Inc. d/b/a Epic Records ("EPIC") is a Delaware general partnership with a principal place of business at 25 Madison Avenue, New York, NY 10010. EPIC's registered agent is CORPORATION SERVICE COMPANY at 251 Little Falls Drive, Wilmington, DE 19808. Upon information and belief, EPIC distributed and commercially licensed the Infringing Work, including copies embodying the Registered Sample, and coordinated its marketing and sales in New York and throughout the United States. EPIC has published, distributed, and/or advertised and continues to publish, distribute, and/or advertise TRAVIS SCOTT and JACKBOY's songs including the infringing sound recording in New York, and throughout the United States. EPIC has generated substantial revenue from the exploitation of the infringing sound recording in New York, and throughout the United States. Upon further information and belief, EPIC entered into contracts with the other Defendants which authorized and caused the widespread exploitation of the infringing sound recording in New York, and throughout the United States. EPIC arranged for the distribution and commercial licensing of the infringing sound recording and EPIC is responsible for coordinating, among other things, the marketing, licensing, promotion, and sales of the infringing sound recording in New York, and throughout the United States. Upon information and belief, EPIC conducts systematic and continuous business in this District including having its principal place of business in New York and EPIC has

generated substantial revenue from the exploitation of the infringing sound recording in this District. EPIC has previously and continues to offer for sale and has caused others to offer for sale the infringing sound recording in New York, and throughout the United States. EPIC has sold and benefitted and continues to sell and benefit from the sale and commercial exploitation of the infringing sound recording in New York, and throughout the United States.

26. Upon information and belief, CACTUS JACK RECORDS, LLC ("CACTUS JACK") is a Texas limited liability company with a principal place of business at c/o Kia Kamran P.C., 1900 Avenue Of The Stars, 25th Floor, Los Angeles, CA 90067. CACTUS JACK's registered agent is ERESIDENTAGENT, INC. at 1501 S. Mopac Expressway, Suite #220, Austin, Texas 78746. Upon information and belief, CACTUS JACK distributed and commercially licensed the Infringing Work, including copies embodying the Registered Sample, and coordinated its marketing and sales in New York and throughout the United States. CACTUS JACK has published, distributed, and/or advertised and continues to publish, distribute, and/or advertise TRAVIS SCOTT and JACKBOY's songs including the infringing sound recording in New York, and throughout the United States. CACTUS JACK has generated substantial revenue from the exploitation of the infringing sound recording in New York, and throughout the United States. Upon further information and belief, CACTUS JACK entered into contracts with the other Defendants which authorized and caused the widespread exploitation of the infringing sound recording in New York, and throughout the United States. Upon information and belief, CACTUS JACK caused the Infringing Work, including copies embodying the Registered Sample, to be delivered for commercial distribution under that arrangement and

participated in its commercial exploitation in New York and throughout the United States. CACTUS JACK arranged for the distribution and commercial licensing of the infringing sound recording and CACTUS JACK is responsible for coordinating, among other things, the marketing, licensing, promotion, and sales of the infringing sound recording in New York, and throughout the United States. Upon information and belief, CACTUS JACK conducts systematic and continuous business in this District including having its principal place of business in New York and CACTUS JACK has generated substantial revenue from the exploitation of the infringing sound recording in this District. CACTUS JACK has previously and continues to offer for sale and has caused others to offer for sale the infringing sound recording in New York, and throughout the United States. CACTUS JACK has sold and benefitted and continues to sell and benefit from the sale and commercial exploitation of the infringing sound recording in New York, and throughout the United States. The release notice for the Infringing Work identifies Cactus Jack Records, LLC under exclusive license to Epic Records, a division of Sony Music Entertainment.

27. Upon information and belief, LAFLAME ENTERPRISES, INC. (“LAFLAME”) is a Delaware corporation with a principal place of business at c/o Kia Kamran P.C., 1900 Avenue Of The Stars, 25th Floor, Los Angeles, CA 90067. LAFLAME’s registered agent is ERESIDENTAGENT, INC. at 500 Delaware Avenue, Suite #903, Wilmington, Delaware 19801. Upon information and belief, LAFLAME distributed and commercially licensed the Infringing Work, including copies embodying the Registered Sample, and coordinated its marketing and sales in New York and throughout the United States. LAFLAME has published, distributed, and/or advertised and continues to publish,

distribute, and/or advertise TRAVIS SCOTT and JACKBOY's songs including the infringing sound recording in New York, and throughout the United States. LAFLAME has generated substantial revenue from the exploitation of the infringing sound recording in New York, and throughout the United States. Upon further information and belief, LAFLAME entered into contracts with the other Defendants which authorized and caused the widespread exploitation of the infringing sound recording in New York, and throughout the United States. LAFLAME arranged for the distribution and commercial licensing of the infringing sound recording and LAFLAME is responsible for coordinating, among other things, the marketing, licensing, promotion, and sales of the infringing sound recording in New York, and throughout the United States. Upon information and belief, LAFLAME conducts systematic and continuous business in this District including having its principal place of business in New York and LAFLAME has generated substantial revenue from the exploitation of the infringing sound recording in this District. LAFLAME has previously and continues to offer for sale and has caused others to offer for sale the infringing sound recording in New York, and throughout the United States. LAFLAME has sold and benefitted and continues to sell and benefit from the sale and commercial exploitation of the infringing sound recording in New York, and throughout the United States.

28. Upon information and belief, LONDON CYR PRODUCTIONS INC. ("CYR PRODUCTIONS") is a Canadian corporation with a principal place of business at 1701 Richardson Street, Victoria, British Columbia V8S 1R6 Canada. CYR PRODUCTIONS's registered agent is 1701 Richardson Street, Victoria, British Columbia V8S 1R6 Canada. Upon information and belief, CYR PRODUCTIONS

distributed and commercially licensed the Infringing Work, including copies embodying the Registered Sample, and coordinated its marketing and sales in New York and throughout the United States. CYR PRODUCTIONS has published, distributed, and/or advertised and continues to publish, distribute, and/or advertise TRAVIS SCOTT, LONDON CYR, GENIUS, and JACKBOY's songs including the infringing sound recording in New York, and throughout the United States. CYR PRODUCTIONS has generated substantial revenue from the exploitation of the infringing sound recording in New York, and throughout the United States. Upon further information and belief, CYR PRODUCTIONS entered into contracts with the other Defendants which authorized and caused the widespread exploitation of the infringing sound recording in New York, and throughout the United States. CYR PRODUCTIONS arranged for the distribution and commercial licensing of the infringing sound recording and CYR PRODUCTIONS is responsible for coordinating, among other things, the marketing, licensing, promotion, and sales of the infringing sound recording in New York, and throughout the United States. Upon information and belief, CYR PRODUCTIONS conducts systematic and continuous business in this District including having its principal place of business in New York and CYR PRODUCTIONS has generated substantial revenue from the exploitation of the infringing sound recording in this District. CYR PRODUCTIONS has previously and continues to offer for sale and has caused others to offer for sale the infringing sound recording in New York, and throughout the United States. CYR PRODUCTIONS has sold and benefitted and continues to sell and benefit from the sale and commercial exploitation of the infringing sound recording in New York, and throughout the United States.

## IV. FACTUAL ALLEGATIONS

29. The Plaintiff is the sole owner and the exclusive rights holder of the preexisting sound recording "*Moazin99bpm*" (the "Registered Sample"), which Plaintiff created and fixed before the later beat incorporated into the Infringing Work which was wrongfully released and monetized by the Defendants. Plaintiff alleges that actual sound recording contained the Registered Sample were copied and incorporated into the subsequently released sound recording "*What To Do*," alternate title "*What To Do?*" (the "Infringing Work") by JACKBOYS including by Defendants TRAVIS SCOTT, DON TOLIVER, SHECK WES, MIKE DEAN, CYR, and JENIUS. The Infringing Work was then later wrongfully distributed and commercially monetized and licensed by the other Defendants SME, EPIC, CACTUS JACK, LAFLAME, and CYR PRODUCTIONS without lawful authorization or proper compensation. The Registered Sample and the Infringing Work are distinct sound recordings. The Plaintiff works as an international rap, hip-hop, and pop music producer, songwriter, and creator of original musical compositions and sound recordings including crafting original musical instrumentals and "beats" for the sale, licensing, and usage by other musicians including recording artists such as Defendants TRAVIS SCOTT, DON TOLIVER, and SHECK WES.

30. The Plaintiff is the owner of the United States copyright in all rights, titles, and interests in the Registered Sample. The sound recording contained in the Registered Sample is an original work, copyrightable under the Copyright Act. Thus, the Plaintiff has exclusive rights and privileges in the Registered Sample including reproduction, preparation of derivative works using its recorded work, distribution, and public performance by digital audio transmission to the extent protected under 17 U.S.C. §§ 106 and 114. The sound

recording was properly registered with the United States Copyright Office on June 25, 2026, as Registration No. SR-1-071-542. The Certificate of Copyright reflecting the foregoing registration is attached hereto as Exhibit "A".

31. Upon reasonable information and belief, Jacques Bermon Webster II professionally known as "TRAVIS SCOTT" is a *Grammy* nominated international hip-hop artist.

32. Upon reasonable information and belief, the album, "*Jackboys*" released by JACKBOYS including Defendants TRAVIS SCOTT, DON TOLIVER, SHECK WES containing the Infringing Work achieved extensive commercial success including debuting at number 1 on the prestigious *Billboard* 200 album chart with the Infringing Work being noted as one of the "standout" tracks on the album. Additionally, further exemplifying the level of the success of the album containing the Infringing Work achieved, to date, the Infringing Work has amassed over a quarter billion compensated digital streams, views, and plays including on *Spotify* and *YouTube*, among other commercial physical and digital media outlets (Exhibit "B").

33. On or about December 27, 2019, Defendants TRAVIS SCOTT, DON TOLIVER, SHECK WES, through its authorized licensees SME, EPIC, CACTUS JACK, LAFLAME, and CYR PRODUCTIONS commercially released the sound recording "*What To Do*" alternate title "*What To Do?*" (collectively the "Infringing Work") that contained the Registered Sample. The Infringing Work was commercial released by the Defendants on all major digital and physical content distribution platforms including but not limited to *Spotify*, *Apple Music*, *Tidal*, *SoundCloud*, *Google Play*, the *iTunes Store*, *YouTube*, *Amazon Music*, *Deezer*, and other monetized distribution systems without compensation or any written or other authorization or consent from the Plaintiff. The

release notice identifies Cactus Jack Records, LLC under exclusive license to Epic Records, a division of Sony Music Entertainment. Plaintiff alleges that the commercial exploitation by Defendants violates Plaintiff's rights in the Registered Sample (Exhibit "B").

34. On May 11, 2019, the Plaintiff (from Email address: "interestmental@gmail.com") submitted an electronic mail containing a file attachment titled "*New Saudi Pack.zip*" which contained the Registered Sample to an authorized representative and business manager for Defendants CYR, CYR PRODUCTIONS, and JENIUS, Mr. Peter Mahne (to Email address: "peter.mahne96@gmail.com") (the "May 11 Email") (Exhibit "C").

35. Later, on July 4, 2019, the Plaintiff (from Email address: "interestmental@gmail.com") submitted another electronic mail containing a file attachment titled "*Saudi Pack (extended version by early00).zip*" which also contained the Registered Sample to the asme authorized representative and business manager for Defendants CYR, CYR PRODUCTIONS, and JENIUS, Mr. Peter Mahne (to Email address: "peter.mahne96@gmail.com") (the "July 4 Email") (Exhibit "D").

36. Subsequent to the May 11 Email and July 4 Email (collectively the "Registered Sample Emails"), on October 30, 2019, Defendant CYR (from Email address: "cyrmgmt@gmail.com") submitted an electronic mail to Plaintiff (to Email address: "earlyyellow2000@gmail.com") containing a file attachment titled "*jeniuslondopeter 118.mp3*" (the "Intermediate Beat"), which incorporated Plaintiff's Registered Sample (the "October 30 Email"). The Intermediate Beat was later wrongfully incorporated into the Infringing Work released and commercially by Defendants after it was submitted to the Plaintiff for review and approval by Defendant CYR (Exhibit "E").

37. The Infringing Work and the Registered Sample contain identical instrumental and non-vocal elements such as chord progressions and the voicing of the chords, with the only difference between the two works being the addition of a vocal performance by Defendants TRAVIS SCOTT, DON TOLIVER, and SHECK WES on the Infringing Work (Exhibit “F”).

38. The Infringing Work contains similarities and identical copies of musical material from the Registered Sample including at least “sixteen similarities and identical copies of musical material from” the Registered Sample that also appear in the Infringing Work (Exhibit “F”).

39. As is customary, Plaintiff is publicly credited as “*Produced by Earlyyellow00*” on the *Apple Music* and *Spotify* credit listings, among other public outlets, including being listed by the Defendants as a “composer,” “lyricist,” “songwriter,” and a “studio producer” for the Infringing Work (Exhibit “G”).

40. The Infringing Work is also the same exact work owned by the Plaintiff as it is the exact sound recording contained in the Registered Sample as Plaintiff alleges that Defendants CYR, CYR PRODUCTIONS, and JENIUS were provided the Registered Sample by Plaintiff and then Defendants CYR, CYR PRODUCTIONS, and JENIUS interpolated and incorporated the entire Registered Sample into the Intermediate Beat which was later incorporated into the Infringing Work by Defendants. The Infringing Work was then wrongfully commercialized and publicly released by Defendants (Exhibit “F”).

41. The Infringing Work that contains the Registered Sample was released to critical and commercial success, including receiving notable global press and media coverage in many popular music and entertainment publications including but not limited to

*Billboard Magazine*, *Rolling Stone Magazine*, *Forbes*, *Vibe Magazine*, *XXL Magazine*, *Pitchfork*, and *Fader Magazine*, and many others (Exhibit "B").

42. In fact, to date, the Infringing Work that contains the Registered Sample has garnered over 270 million compensated streams on *Spotify* as well as over 60 million plays on *YouTube* while all the earned revenues generated from the Registered Sample sound recording that was interpolated into Infringing Work was provided to the Defendants while nothing was paid to the Plaintiff for the rights to include the sound recording contained in the Registered Sample in the Infringing Work. The Infringing Work that contains the Registered Sample continues to receive millions of compensated plays on *Spotify* as well as on many other commercial distribution channels with these additional transactions related to the sound recording contained in the Infringing Work solely compensating the Defendants daily while continuing to provide the Plaintiff with nothing related to the earnings from the sound recordings contained in the Registered Sample that was incorporated into the Infringing Work by Defendants in further violation of the Plaintiff's rights in the Registered Sample (Exhibit "B").

43. Accordingly, the Infringing Work containing the Plaintiff's Registered Sample was released over seven years ago with the Defendants providing no compensation whatsoever for the usage of sound recording contained in the Registered Sample and receiving no written authorization from the Plaintiff to release and/or otherwise monetize the Registered Sample contained in the Infringing Work as no agreement or other written instrument was ever executed or even offered to the Plaintiff to properly secure rights to utilize the sound recording contained in the Registered Sample which was incorporated into the Infringing Work. Therefore, the Infringing Work was released without

authorization and compensation in violation of the Plaintiff's rights in the sound recording contained in the Registered Sample which was later incorporated into the Infringing Work by Defendants TRAVIS SCOTT, DON TOLIVER, SHECK WES, MIKE DEAN, CYR, and JENIUS.

44. To date, the Infringing Work containing the sound recording in the Plaintiff's Registered Sample, which was released over seven years ago, has achieved hundreds of millions of compensated streams as well as physical and digital sales with the Defendants continuing to earn daily income through additional monetized uses without providing any compensation to the Plaintiff for the revenues previously received by the Defendants for the exploitation of the sound recording contained in the Infringing Work (Exhibit "B").

45. Moreover, the Infringing Work containing the Plaintiff's Registered Sample achieved commercial success on relevant music charts, was featured in a popular music videos and on social media, has been performed by and continues to be a staple of Defendants TRAVIS SCOTT, DON TOLIVER, SHECK WES' live performances, and have helped propel all the Defendants TRAVIS SCOTT, DON TOLIVER, SHECK WES to further fame and success (Exhibits "B" & "H").

46. The Plaintiff has never been paid any royalties or any income for Defendants usage of the sound recording contained in the Registered Sample inserted in the derivative work, the Infringing Work including for revenues generated before December 27, 2019, when the beat was being used in a completely unauthorized manner, or after December 27, 2019, during which the Plaintiff should have been receiving sound-recording royalties and other income attributable to the exploitation of the sound recording. This is not Defendants first public instance of unauthorized usage as Defendants have a history of such actions

(Exhibit "I").

47. The Plaintiff first published the original composition and recording contained in the Registered Work on December 27, 2019.

48. Upon information and belief, the Defendants received the Registered Sample from the Plaintiff to utilize in the Infringing Work with the knowledge that the Plaintiff expected and anticipated receiving revenues and compensation upon the commercial exploitation and usage of the sound recording contained in the Registered Sample which was incorporated into the Infringing Work including from the rights existing in the sound recording contained in the Registered Sample.

49. The Registered Sample is strikingly similar to the Infringing Work and the Infringing Work adopted identical elements of the recording and compositional copyright of the Plaintiff's Registered Sample including the Infringing Work through copying the actual sounds fixed in the Registered Sample (Exhibit "F").

50. The Infringing Work is a completely unauthorized use and derivative work of the sound recording contained in the Plaintiff's Registered Sample.

51. The Defendants are well-aware of the Defendants' unauthorized use of the sound recording contained in the Registered Sample incorporated in the Infringing Work as the Plaintiff reached out to the Defendants several times about the usage of the sound recording contained in the Registered Sample in the Infringing Work, but Defendants still continue to monetize the sound recording contained in the Registered Sample which was incorporated into Infringing Work while paying the Plaintiff nothing for the usage of the sound recording contained in the Registered Sample.

52. Accordingly, the Defendants had actual knowledge that the Plaintiff received zero

compensation for usage of the sound recording contained in the Registered Sample wrongfully interpolated into the Infringing Work.

53. The Registered Sample is a recording of the same exact one as the Infringing Work and the Infringing Work adopted all the elements of the recording and compositional copyright of the Plaintiff's Registered Sample (Exhibit "F").

54. The Infringing Work is a completely unauthorized use of the sound recording contained in the Plaintiff's Registered Sample.

55. The Defendants are well-aware of the Defendants' unauthorized use of the sound recording contained in the Registered Sample as the Defendants reached out to the Plaintiff several times about the interpolation of the sound recording included in the Registered Sample into the Infringing Work, but Defendants continue to monetize the Infringing Work containing the sound recording contained in the Registered Sample while paying the Plaintiff nothing for the usage of the sound recording contained in the Registered Sample.

56. Accordingly, the Defendants had actual knowledge that the Plaintiff received zero compensation for usage of the sound recording contained in the Registered Sample which was interpolated into the Infringing Work.

57. In fact, on or August 5, 2020, Plaintiff first provided written notice to SME and EPIC via electronic mail as Plaintiff submitted a formal demand letter addressed to: "Meagan Johnson, Analyst, Copyright Administration, Columbia & Epic Label Group 25 Madison Ave. | New York, NY 10010" and sent by electronic mail to: "meagan.johnson@sonymusic.com" requesting the Plaintiff's compensation for the unauthorized usage of the sound recording contained in the Registered Sample which was

wrongfully inserted into the Infringing Work (Exhibit "J").

58. Subsequently, after receiving no payment related to the usage of the sound recording contained in the Registered Sample for almost five years, on or about June 19, 2025, after still failing to fully receive all the compensation payable for the Defendants usage of the sound recording contained in the Registered Sample which was incorporated into the Infringing Work, as a result of the Defendants extensive unauthorized and uncompensated illicit usage of the sound recording contained in the Registered Sample owned by the Plaintiff, Plaintiff's previous Israeli counsel Amit Karmon, Esq. notified "Cactus Jack Records" care of Defendant TRAVIS SCOTT's counsel David Byrnes (at email: DavidB@ziffrenlaw.com) and Mehreen Ahmed Chaudry (at email: MehreenC@ziffrenlaw.com) by electronic mail of this issue (hereinafter referred to as the "Breach Notice #1"). The Breach Notice #1 informed the Defendants of their failure to remedy their previous and current violations of the Plaintiff's rights in the sound recording contained in the Registered Sample as well as provided an offer for a "license" to Defendants but Plaintiff received no suitable offer, answer, or response from the Defendants (Exhibit "K").

59. In response to the Defendants' continued and extensive unauthorized and uncompensated exploitation of the Infringing Work containing the sound recording that is part of the Plaintiff's Registered Sample, on June 22, 2026, the Defendants' counsel David Byrnes (at email: DavidB@ziffrenlaw.com) and Mehreen Ahmed Chaudry (at email: MehreenC@ziffrenlaw.com) were notified by Plaintiff's current counsel Justin M. Jacobson, Esq. of Justin Jacobson Law, P.C. of the Defendants' ongoing infringements of the sound recording included in the Registered Sample wrongfully contained in the

Infringing Work including specifically confirming that the Defendants never executed any agreement nor reached any arrangement with the Plaintiff related to the authorized distribution, commercialization, exploitation, marketing, and/or promotion of the sound recording contained in the Registered Sample by electronic mail and by U.S. mail (hereinafter referred to as the "Breach Notice #2"). Similar to the Breach Notice #1, the Breach Notice #2 again demanded that the Defendants deliver an accounting of the income earned via the exploitation of the sound recording contained in the Registered Sample interpolated into the Infringing Work as well as to provide payment to the Plaintiff in the amount of a percent of the monies earned by the Defendants for the unauthorized release and commercial exploitation of the sound recording contained in the Registered Sample interpolated in the Infringing Work as the Plaintiff is a rightful owner of sound recording contained in the Registered Sample that was incorporated into the Infringing Work and commercially distributed by the Defendants without payment or proper permission (Exhibit “L”).

60. Consequently, even after the Defendants received notice of and acknowledged the existing and continuous infringement of the sound recording contained in the Registered Sample contained in the Infringing Work as stated in the Breach Notice #2, among other written notifications, the Defendants still failed to respond, remedy or otherwise cure the listed deficiencies in the Breach Notice #2. Accordingly, on or about July 6, 2026, the Defendants’ counsel David Byrnes (at email: DavidB@ziffrenlaw.com) and Mehreen Ahmed Chaudry (at email: MehreenC@ziffrenlaw.com) were provided with another formal breach notice by electronic mail and by U.S. mail wherein the Defendants were again notified by the Plaintiff’s current counsel Justin M. Jacobson, Esq. of Justin

Jacobson Law, P.C. of the Defendants' still outstanding payment obligations and demanding that the Defendants immediately cease their ongoing willful infringement of the sound recording contained in the Registered Sample wrongfully interpolated in the Infringing Work (hereinafter referred to as the "Breach Notice #3"). Despite receiving the Breach Notice #3, the Defendants again disregarded the contentions contained in the notice and continued to willfully exploit the sound recording contained in the Registered Sample incorporated in the Infringing Work without permission or compensation to the Plaintiff, which constitute additional examples of willful copyright infringement (Exhibit "M").

61. In response to the Breach Notice #3, on or about July 6, 2026, the counsel for Defendants Mehreen Ahmed Chaudry, Esq. acknowledged receipt of the Breach Notice #3 and stated via email correspondence to the Plaintiff's current counsel Justin M. Jacobson, Esq. of Justin Jacobson Law, P.C., "Confirming receipt of your (Plaintiff's counsel) email below. We are looking into this matter and will get back to you as soon as possible" This written statement by Defendants' counsel confirmed the receipt of the notice as the Defendants' counsel stated that they would investigate the matter (Exhibit "N").

62. Accordingly, even after the Defendants received the Breach Notice #1, the Breach Notice #2, and the Breach Notice #3 (collectively hereinafter referred to as the "Breach Notices"), the Defendants repeatedly ignored the written contentions of the Plaintiff and continued to willfully exploit the Infringing Work containing the sound recording included in the Plaintiff's Registered Sample without permission or compensation to the Plaintiff for usage of the sound recording contained in the Registered Sample, which constitutes additional examples of willful copyright infringement.

63. As a result of the Defendants continued willful infringement and wrongful monetization of the sound recording contained in the Registered Sample incorporated in the Infringing Work without any compensation to or proper rights from the Plaintiff to use the sound recording contained in the Registered Sample and in an attempt to mitigate the Plaintiff's damage and to protect Plaintiff's rights in sound recording contained in the Registered Sample, taking into account the lack of any reasonable or plausible "fair use" claim by the Defendants, on or about October 16, 2026, the Plaintiff through his authorized representative Justin M. Jacobson, Esq. of Justin Jacobson Law, P.C. filed a series of "takedown" notices under the Digital Millennium Copyright Act ("DMCA") against the Infringing Work that incorporated sound recording contained in the Registered Sample that is and has previously been unlawfully reproduced, displayed, and offered for sale as digital download files, audio-visual works, and musical streams, including submitting appropriate DMCA takedown notices to *Spotify*, *Pandora*, *Apple Music*, *SoundCloud*, *Deezer*, *Tidal*, and *YouTube* (hereinafter collectively referred to as the "DMCA Takedown Notices") (Exhibit "O").

64. In further violation of the Plaintiff's rights and in direct violation of § 512(f)(2) of the DMCA Act, on or about October 28, 2026, in response to the DMCA Takedown Notices issued by the Plaintiff, Defendants SME and EPIC through its "Daija.Brunson@sonymusic.com" email account, knowingly and materially misrepresented that the DMCA Takedown Notices filed by the Plaintiff were a "mistake" or alternatively, a "misidentification" made by the Plaintiff by filing a false counter-notice with *Apple Music* ("Track Apple ID: 1492786012") On or about November 5, 2026, with *Spotify* ("spotify:track:4AO1XhrgJczQ9bNVxdfKQe"), and on or about

November 9, 2026 with *YouTube* ("[XVG7MFAY3VAQZKKUU2PNF3V2EM] YouTube Copyright Complaint Submission"), Defendants SME and EPIC filed similar counternotices with other digital music distributors and internet service providers ("ISPs") under § 512(g) of the DMCA Act including *YouTube* and *Spotify* (hereinafter collectively referred to as the "DMCA Counter-Notices"). Specifically, Defendants SME and EPIC through its "Daija.Brunson@sonymusic.com" email account, disputed the contents of the DMCA Takedown Notices rightfully filed by the Plaintiff as well as filed similar false counternotices with *YouTube* and *Spotify*. In fact, in the DMCA Counter-Notices, through its authorized representative "Daija.Brunson@sonymusic.com" wherein Defendants SME and EPIC issued a statement that "Provider (Defendants) Asserts Rights" in the Infringing Work. It is clear and indisputable that Plaintiff owns rights in the sound recording contained in Registered Sample inserted into the Infringing Work and that Defendants SME and EPIC's actions are not subjectively or otherwise protected by "fair use" and that Defendants SME and EPIC clearly had no good faith or reasonable belief that the DMCA Takedown Notices filed by the Plaintiff were a "mistake" or "misidentification." Accordingly, these wrongful and fraudulent actions perpetuated by Defendants SME and EPIC, have previously and are currently continuing to cause substantial damage to the Plaintiff (Exhibit "P").

65. Specifically and further highlighting the Defendants' continued bad faith and improper actions directed at harming the Plaintiff's business interests, as a result of the DMCA Counter-Notices fraudulently filed by Defendants SME and EPIC, the Infringing Work that was previously rightfully removed and disabled as a result of the Plaintiff utilizing the DMCA Takedown Notices was subsequently reinstated by *Apple Music, Spotify*,

*YouTube*, and *iTunes* (among other digital distribution platforms) thereby reenabling the infringing content and allowing the Defendants to continue perpetuating its unlawful and willful infringement of the sound recording contained in the Registered Sample which was incorporated into the Infringing Work and in furtherance of the Defendants' ongoing violation of the Plaintiff's rights in the sound recording contained in the Registered Sample which was incorporated into the Infringing Work. To date, the Infringing Work containing the sound recording included in the Registered Sample which was identified in the DMCA Takedown Notices filed by the Plaintiff continues to be monetized by the Defendants as a result of Defendants SME and EPIC's filing of the DMCA Counter-Notices.

66. It is clear that the Defendants had actual knowledge that the Plaintiff had received zero compensation for the usage of the sound recording contained in the Registered Sample owned by the Plaintiff that was incorporated into the Infringing Work while the sound recording in the Infringing Work is continually generating revenue through the Defendants' unlawful monetization of it.

67. In fact, in response to the Plaintiff's several written requests for payment, income accounting statements, and proper sound recording royalties, the Defendants continued to tell the Plaintiff that they would resolve the matter, yet the Defendants never attempted to make good faith or any efforts at all on its repeated promises to do just that.

68. While the Infringing Work containing the Registered Sample has generated over half a decade of streaming and sales revenue on over 300 million compensated views, among other income, the Defendants never paid the Plaintiff any income or royalties based upon the sums earned from the sound recording contained in the Registered Sample. In fact, it

is clear that substantial revenue is generated daily as prior to the viewing of and/or during the Infringing Work containing the Registered Sample on *YouTube*, an advertisement appears for which the Defendants are entitled to and do receive a royalty or other revenue from, which is the Plaintiff's money.

69. Even after receiving the Breach Notices and the DMCA Takedown Notices, the Defendants still continue with its ongoing infringing actions which constitute actionable willful infringement of the Plaintiff's rights in the sound recording contained in the Registered Sample.

70. Despite the Breach Notices and the DMCA Takedown Notices provided by the Plaintiff to the Defendants, all of the Defendants still continue to infringe the sound recording contained in the Plaintiff's Registered Sample. The infringement by the Defendants is willful, as evidenced by Defendants continuing to infringe the sound recording contained in the Registered Sample even after the Breach Notices and the DMCA Takedown Notices were provided to and acknowledged by them.

71. In sum, the Plaintiff has not been paid any royalties from the Defendants as it relates to sound recording contained in the Registered Sample that was interpolated into the Infringing Work, despite the sound recording contained in the Registered Sample being used in a song that has hundreds of millions of monetized transactions across all major platforms.

72. To date, each of the Defendants reproduced, distributed, publicly performed and/or authorized the reproduction, distribution, and public performance of the sound recording contained in the Registered Sample owned by the Plaintiff that was incorporated into the Infringing Work and each of the Defendants continues to infringe the sound recording

incorporated into the Registered Sample.

73. Accordingly, the Plaintiff institutes the instant copyright infringement because Defendants in this action have knowingly, willing, and continuously monetized the sound recording contained in the Registered Sample owned by the Plaintiff without authorization and without compensation in violation of the law.

74. The Defendants knowingly and intentionally infringed Plaintiff's rights including fraudulently opposing validly issued the DMCA Takedown Notices by filing the DMCA Counter-Notices. The Defendants' collective knowledge and intent is established by, among other things, the fact that Defendants, to this day have neither sought nor obtained a license from the owners of the rights nor provide any promised payment related to the sound recording contained in the Registered Sample. All conditions precedent to the maintenance and/or establishment of the instant action have been satisfied and/or, otherwise, waived by the Defendants.

**FIRST CAUSE OF ACTION**
**(Willful Copyright Infringement – 17 U.S.C. 101, *et. seq.*)**
**Against All Defendants**

75. Plaintiff repeats, re-alleges, and incorporates by reference each and every fact set forth in the preceding Paragraphs of the Complaint as if they were fully set forth herein.

76. Upon information and belief, the Defendants TRAVIS SCOTT, DON TOLIVER, SHECK WES, MIKE DEAN, CYR, and JENIUS, infringed on the Plaintiff's exclusive copyright in sound recording contained in the Registered Sample when TRAVIS SCOTT, DON TOLIVER, SHECK WES, MIKE DEAN, CYR, and JENIUS distributed and sold a sound recording, including compact discs, phonorecords, digital downloads, licenses, streaming, ringtones, ringbacks, and all other economic exploitation and video

recordings, embodying the sound recording contained in the Registered Sample and by distributing and broadcasting the sound recording contained in the Registered Sample on radio, television, film, and streaming platforms, including but not limited to *Spotify*, *Apple Music*, *Tidal*, *SoundCloud*, *Google Play*, *Deezer*, the *iTunes Store*, *YouTube*, *Amazon Music*, selling recordings of the sound recording contained in the Registered Sample, and publicly performing of the sound recording contained in the Registered Sample live. Such reproduction and release were wholly unauthorized, as it was without any license or consent of authority from the Plaintiff. By virtue of this unauthorized commercial exploitation, Defendants TRAVIS SCOTT, DON TOLIVER, SHECK WES, MIKE DEAN, CYR, and JENIUS has realized illegal revenues.

77. Upon information and belief, the Defendants, SME, EPIC, CACTUS JACK, LAFLAME, and CYR PRODUCTIONS, infringed on the Plaintiff's exclusive copyright in the sound recording contained in the Registered Sample when it distributed and sold a sound recording, including compact discs, phonorecords, digital downloads, licenses, streaming, ringtones, ringbacks, and all other economic exploitation and video recordings, embodying the sound recording contained in the Registered Sample and by distributing and broadcasting the sound recording contained in the Registered Sample on radio, television, film, and streaming platforms, including but not limited to *Spotify*, *Apple Music*, *Tidal*, *SoundCloud*, *Google Play*, *Deezer*, the *iTunes Store*, *YouTube*, *Amazon Music*, selling recordings of the sound recording contained in the Registered Sample, and authorizing the public performance of the sound recording contained in the Registered Sample live. Such reproduction and release were wholly unauthorized, as it was without any license or consent of authority from the Plaintiff. By virtue of this unauthorized

commercial exploitation, Defendants SME, EPIC, CACTUS JACK, LAFLAME, and CYR PRODUCTIONS have realized illegal revenues.

78. Upon information and belief, the Defendants' reproduction, distribution, and public performances of the sound recording contained in the Registered Sample in the United States and internationally, continue to this day, and the Defendants have not deigned to compensate the copyright owner of the sound recording contained in the Registered Sample.

79. Upon information and belief, the Defendants' reproduction, distribution, public performance, streaming, concerts, merchandizing, synchronization, licensing and economic exploitation of the sound recording contained in the Registered Sample, and authorizing others to do the same, infringes the Plaintiff's exclusive rights in the sound recording contained in the Registered Sample under Sections 106 and 501 of the Copyright Act, 17 U.S.C. §§ 106, 114, and 501.

80. Upon information and belief, the foregoing acts of infringement that the Defendants have committed are all deliberately, willfully, intentionally, maliciously, and oppressively, without regard to the Plaintiff's proprietary rights and are in total disregard of and indifference to the Plaintiff's rights in the sound recording contained in the Registered Sample.

81. Upon information and belief, the Defendants infringed the Plaintiff's exclusive copyright in the sound recording contained in the Registered Sample when they issued and/or authorized others to issue licenses to third parties for the use, publication, and/or exploitation of the sound recording contained in the Registered Sample without any compensation or payment to the Plaintiff for the usage of the sound recording contained

in the Registered Sample. Said licenses were issued without any consent or authority from the copyright owner, the Plaintiff due to failing to compensate the Plaintiff for such licenses. By virtue of these unauthorized commercial exploitations, the Defendants have realized illegal revenues.

82. As a direct and/or proximate result of the Defendants' infringement on the Plaintiff's exclusive copyright in the sound recording contained in the Registered Sample, the Plaintiff has suffered actual damages including lost profits, lost opportunities, loss of goodwill, and lost publicity.

83. As a direct and/or proximate result of the Defendants' infringement on the Plaintiff's exclusive copyright in the sound recording contained in the Registered Sample, the Plaintiff has suffered actual, general, and special damages in an amount to be established at trial pursuant to 17 U.S.C. § 504(b) for the infringement, including the substantial profits of the Defendants. Said injuries are continuing and will not abate in the future and the Defendants have profited in an amount to be determined at trial.

84. Alternatively, the Plaintiff is entitled to statutory damages up to $150,000 per infringement for the Defendants' willful infringement of the sound recording contained in the Registered Sample since the infringement of the sound recording contained in the Registered Sample occurred when the copyrights was registered and occurred when the sound recording contained in the Registered Sample was published and made widely publicly accessible, pursuant to 17 U.S.C. § 504(c).

85. The Plaintiff is entitled to their costs, including reasonable attorneys' fees, pursuant to 17 U.S.C. § 505.

86. The Defendants' conduct is causing, and unless enjoined by this Court, will continue to

cause the Plaintiff irreparable injury that cannot be fully compensated or measured in monetary terms. The Plaintiff has no adequate remedy at law. Pursuant to 17 U.S.C. § 502, the Plaintiff is entitled to a permanent injunction prohibiting the reproduction, distribution, sale, public performance, or other use or exploitation of the Infringing Work containing the sound recording contained in the Registered Sample including all infringing works or uses derivative thereof, in all formats, configurations and/or media.

87. Due to the Defendants' acts of copyright infringement as alleged herein, Defendants, and each of them, have obtained direct and indirect profits that they would not otherwise have realized but for the infringement of the Plaintiff's rights in the sound recording contained in the Registered Sample. As such, the Plaintiff is entitled to disgorgement of the Defendants' profits directly and indirectly attributable to the Defendants' infringements of the sound recording contained in the Registered Sample in an amount to be established at trial.

88. Plaintiff is informed and believes and now alleges that the Defendants, and each of their, conduct as alleged herein was willful, reckless, and/or with knowledge, subjecting Defendants, and each of them, to enhanced statutory damages, claims for costs and attorneys' fees, and/or a preclusion from deducting certain costs when calculating disgorgeable profits.

**SECOND CAUSE OF ACTION**
**(For Vicarious and/or Contributory Copyright Infringement – 17 U.S.C. 101, *et. seq.*)**
**Against All Defendants**

89. Plaintiff repeats, re-alleges, and incorporates by reference each and every fact set forth in the preceding Paragraphs of the Complaint as if they were fully set forth herein.

90. Upon information and belief, the Plaintiff now alleges that the Defendants, and each of

them, are contributorily and/or vicariously liable for the infringement and infringing conduct of others alleged herein because the Defendants, and each of them, had the right and ability to supervise the infringing conduct and because the Defendants, and each of them, had a direct financial interest in the infringing conduct and the Defendants knowingly induced, participated in, caused, materially contributed to, aided and abetted in and profited from the illegal reproduction, distribution, and publication of the Infringing Work wrongfully incorporating the sound recording contained in the Registered Sample as alleged above. The Defendants, and each of them, had the ability to oversee the publication and distribution of the Infringing Work wrongfully incorporating the sound recording contained in the Registered Sample and underwrote, facilitated, and participated in the other Defendants' infringement of the sound recording contained in the Registered Sample. Defendants, and each of them, realized profits through their respective reproduction, distribution, and publication of the sound recording contained in the Registered Sample.

91. With knowledge of the infringement, the Defendants, and each of them, have induced, caused, or materially contributed to the infringing conduct of others, such that they should be found to be contributorily liable.

92. The Defendants, and each of them, had the right and ability to control other infringers and the Defendants, and each of them, have derived a direct financial benefit from that infringement such that the Defendants should be found to be vicariously liable.

93. The infringement is continuing as the sound recording contained in the Registered Sample wrongfully incorporated in the Infringing Work continues to be sold and t the Registered Sample wrongfully incorporated in the Infringing Work continues to be licensed for sale,

download, ringtones, streaming, and other exploitations by the Defendants, or their agents without any compensation to the Plaintiff.

94. As a direct and proximate result of the conduct of the Defendants, the Plaintiff has suffered actual damages including lost profits, lost opportunities, loss of goodwill, and lost publicity.

95. As a direct and/or proximate result of the Defendants' acts of contributory and vicarious infringement on the Plaintiff's exclusive copyright in the sound recording contained in the Registered Sample as alleged above, the Plaintiff has suffered actual, general, and special damages in an amount to be established at trial pursuant to 17 U.S.C. § 504(b) for the infringement, including the substantial profits of the Defendants. Said injuries are continuing and will not abate in the future and the Defendants have profited in an amount to be determined at trial.

96. Alternatively, the Plaintiff is entitled to statutory damages up to $150,000 per infringement for the Defendants' willful infringement of the sound recording contained in the Registered Sample since the infringement of the sound recording contained in the Registered Sample occurred when copyright was registered and occurred when the sound recording contained in the Registered Sample was published and made widely publicly accessible, pursuant to 17 U.S.C. § 504(c).

97. The Plaintiff is entitled to its costs, including reasonable attorneys' fees, pursuant to 17 U.S.C. § 505.

98. The Defendants' conduct is causing, and unless enjoined by this Court, will continue to cause the Plaintiff irreparable injury that cannot be fully compensated or measured in monetary terms. The Plaintiff has no adequate remedy at law. Pursuant to 17 U.S.C. § 502,

the Plaintiff is entitled to a permanent injunction prohibiting the reproduction, distribution, sale, public performance, or other use or exploitation of the Infringing Work containing the sound recording contained in the Registered Sample, including all infringing works or uses derivative thereof, in all formats, configurations and/or media.

99. Due to Defendants' acts of copyright infringement as alleged herein, Defendants, and each of them, have obtained direct and indirect profits that the Defendants would not otherwise have realized but for their infringement of the Plaintiff's rights in the Registered Sample. As such, the Plaintiff is entitled to disgorgement of the Defendants' profits directly and indirectly attributable to the Defendants' infringement of the Plaintiff's rights in the Registered Sample in an amount to be determined at trial.

100. The Plaintiff is informed and believes and now alleges that the Defendants, and each of their, conduct as alleged herein was willful, reckless, and/or with knowledge, subjecting the Defendants, and each of them, to enhanced statutory damages, claims for costs and attorneys' fees, and/or a preclusion from deducting certain costs when calculating disgorgeable profits.

**THIRD CAUSE OF ACTION**
**(Common Law Unfair Competition By Misappropriation)**
**Against All Defendants**

101. Plaintiff repeats, re-alleges, and incorporates by reference each and every fact set forth in the preceding Paragraphs of the Complaint as if they were fully set forth herein.

102. The Plaintiff licenses original musical compositions and recordings that Plaintiff creates, at a substantial cost to the Plaintiff. The Defendants likewise creates and releases and monetizes original music to the public including musical works like the Plaintiff.

103. By offering the Infringing Work containing the sound recording contained in the Registered Sample that was created and owned by the Plaintiff, which is the same content licensable by the Plaintiff, the Defendants directly compete with the Plaintiff's work. The Defendants' use of the Plaintiff's work misappropriated the fruit of the Plaintiff's labors and usurps the specific commercial opportunities of the Plaintiff, such as the revenue generated by licensing, selling, or otherwise monetizing the sound recording contained in the Registered Sample elsewhere. For example, failing to contract with the Plaintiff for the exclusive rights to the sound recording contained in the Registered Sample incorporated in the Infringing Work has resulted in the failure to provide any payment or compensation at all for the usage of the sound recording contained in the Registered Sample, and as a result, the Defendants have deprived the Plaintiff of the opportunity to receive alternative revenue through the sale or licensing of the sound recording contained in the Registered Sample incorporated in the Infringing Work elsewhere due to the Defendants incorporating, monetizing, and appropriating that opportunity for solely for the Defendants thereby prohibiting any other musical artist from commercializing or obtaining the sound recording contained in the Registered Sample from the Plaintiff for just compensation.

104. The Defendants' uses, including the release of the sound recording contained in the Registered Sample, which was interpolated into the Infringing Work, directly competes with the Plaintiff's uses and impairs the Plaintiff's ability to release, commercialize, and/or otherwise monetize the sound recording contained in the Registered Sample with others including other similar recording artists.

105. The Defendants' uses, including the release of the sound recording contained in the Registered Sample owned by the Plaintiff without compensation or any payment to the Plaintiff constitutes free-riding on the Plaintiff's significant efforts and investment of human capital to create and license the sound recording contained in the Registered Sample.

106. The Defendants' misuse and misappropriation of the sound recording contained in the Registered Sample which was subsequently incorporated into the Infringing Work has caused the Plaintiff to suffer actual damages from the deprivation of the benefits of his works, such as, without limitation, lost licensing, sales, and other related revenues.

107. As such, the Defendants engaged in unfair competition through fraud and/or bad faith and misappropriated the labor and expenditures of the Plaintiff for their own unjust and unlawful gain, and at the expense of the Plaintiff's own opportunities.

108. The Plaintiff suffered damages as a result of the Defendants' unfair competition and misappropriation in an amount to be determined at trial.

**FOURTH CAUSE OF ACTION**
**(Violation of Digital Millennium Copyright Act § 512(f)(1), (2) for Misrepresentation)**
**Against All Defendants**

109. Plaintiff repeats, re-alleges, and incorporates by reference each and every fact set forth in the preceding Paragraphs of the Complaint as if they were fully set forth herein.

110. The Plaintiff issued the DMCA Takedown Notices in the appropriate form and substance as required under the DMCA against the Defendants for its unauthorized usage and commercial use of the sound recording contained in the Registered Sample which was incorporated into the Infringing Work as the Infringing Work was clearly an infringement and was not disabled by mistake as the sound recording contained in the Registered Sample

is owned by the Plaintiff and the copyrighted work contained in the Infringing Work was and is currently transmitted and publicly available for the unauthorized commercial consumption, streaming, and viewing in violation of the Plaintiff's rights in the sound recording contained in the Registered Sample under Section 512 of Digital Millenium Copyright Act, 17 U.S.C. § 512.

111. Upon information and belief, the Defendants' knowingly and materially misrepresented that the DMCA Takedown Notice provided by the Plaintiff was not in reference to "material or activity" that is infringing as it is clear that the Defendants' usage are infringing and that there is no plausible, subjective, or reasonable "fair use" exemption existing in direct violation of Section 512(f)(1) of the DMCA, 17 U.S.C. § 512(f)(1).

112. Upon information and belief, the Defendants further knowingly and materially misrepresented that the DMCA Takedown Notice provided by the Plaintiff was submitted by mistake or by misidentification by the Plaintiff in direct violation of Section 512(f)(2) of the DMCA, 17 U.S.C. § 512(f)(2).

113. Upon information and belief, the Defendants acted with actual knowledge of the falsity of the DMCA Counter-Notices filed by SME and EPIC, as it is undisputed that the Plaintiff was injured and harmed as a result of the Defendants' infringing actions as the Plaintiff rightfully owns the sound recording contained in the Registered Sample incorporated in the Infringing Work and the Defendants actions were not protected by "fair use."

114. Accordingly, under 17 U.S.C. § 512(f)(2), the Defendants are liable for the damages suffered by the Plaintiff, including costs and attorneys' fees in an amount to be determined at trial.

115. The Defendants' conduct is causing, and unless enjoined by this Court, will continue to

cause the Plaintiff irreparable injury that cannot be fully compensated or measured in monetary terms. The Plaintiff has no adequate remedy at law. Pursuant to 17 U.S.C. § 512(j), the Plaintiff is entitled to a permanent injunction prohibiting and restraining the third-party service providers from publicly displaying the sound recording contained in the Registered Sample incorporated into the Infringing Work on the particular online site, or, in the alternative, terminating the Defendants' accounts and providing the Plaintiff with the owed compensation in an amount to be determined at trial.

**FIFTH CAUSE OF ACTION**
**(Unjust Enrichment)**
**Against All Defendants**

116. Plaintiff repeats, re-alleges, and incorporates by reference each and every fact set forth in the preceding Paragraphs of the Complaint as if they were fully set forth herein.

117. The Defendants knowingly and intentionally licensed the Infringing Work incorporating the sound recording contained in the Registered Sample, and controlled licensing, mechanical licensing, and collection of royalties including to Defendants SME, EPIC, CACTUS JACK, LAFLAME, and CYR PRODUCTIONS.

118. The Defendants knowingly and intentionally signed mechanical licenses with record labels authorizing the inclusion of the Infringing Work incorporating the sound recording contained in the Registered Sample.

119. The Defendants have benefitted substantially from and exploitation of the Infringing Work incorporating the sound recording contained in the Registered Sample.

120. The Defendants have received a monetary benefit from the Infringing Work incorporating the sound recording contained in the Registered Sample in the form of licensing of the sound recording, collection of recording revenues, mechanical licensing, and collection

of royalties, among other revenue.

121. The Defendants accepted the benefits from exploitation of the Infringing Work incorporating the sound recording contained in the Registered Sample such that it would be inequitable for the Defendants to retain the benefits received from the Infringing Work incorporating the sound recording contained in the Registered Sample without fully compensating the Plaintiff for unauthorized use of the protected sound recording contained in the Registered Sample which was incorporated into the Infringing Work without compensation or written permission for the rights to the sound recording contained in the Registered Sample.

122. The Plaintiff has been deprived of compensation associated with the protected sound recording contained in the Registered Sample which was wrongly incorporated into the Infringing Work.

123. The Plaintiff has been deprived of his right to select a party to administer the catalog for the protected sound recording contained in the Registered Sample which was incorporated into the Infringing Work and to control the distribution, licensing, mechanical licensing, and collection of royalties related to the sound recording contained in the Registered Sample which was incorporated into the Infringing Work.

124. The Defendants have been unjustly enriched by exploitation of the Infringing Work including through the unauthorized use of the protected sound recording contained in the Registered Sample, which was incorporated into the Infringing Work, licensing of sound recording rights, collection of recording revenues, mechanical licensing, and collection of royalties.

125. Accordingly, the Plaintiff is entitled to damages for the Defendants' unjust enrichment in an amount to be determined at trial and the Defendants should be required to disgorge their ill-

gotten profits attributable to their infringement of the Registered Sample.

**SIXTH CAUSE OF ACTION**
**(Accounting)**
**Against All Defendants**

126. Plaintiff repeats, re-alleges, and incorporates by reference each and every fact set forth in the preceding Paragraphs of the Complaint as if they were fully set forth herein.

127. The Plaintiff and Defendants TRAVIS SCOTT, DON TOLIVER, SHECK WES, MIKE DEAN, CYR, and JENIUS are co-owners of the sound recording contained in the Infringing Work because Plaintiff and TRAVIS SCOTT, DON TOLIVER, SHECK WES, MIKE DEAN, CYR, and JENIUS mutually agreed, and they each independently contributed copyrightable works to the Infringing Work. The Infringing Work was later publicly distributed in all media and press outlets as well as in digital service providers credit listings.

128. Defendants TRAVIS SCOTT, DON TOLIVER, SHECK WES, MIKE DEAN, CYR, and JENIUS, as co-owners of the sound recording contained in the Infringing Work unilaterally licensed the Infringing Work co-owned by Plaintiff to Defendants SME, EPIC, CACTUS JACK, LAFLAME, and CYR PRODUCTIONS, among other third parties, without an accounting nor compensation or payment to Plaintiff.

129. Defendants TRAVIS SCOTT, DON TOLIVER, SHECK WES, MIKE DEAN, CYR, and JENIUS owed a duty to account to the Plaintiff as the rightful co-owner of sound recording contained in the Infringing Work and despite Plaintiff's numerous demands for the same, Defendants TRAVIS SCOTT, DON TOLIVER, SHECK WES, MIKE DEAN, CYR, and JENIUS did not and have yet to provide Plaintiff with an accounting or any compensation.

130. By reason of the foregoing, the Plaintiff has been damaged by the Defendants' intentional withholding of an accounting of amounts earned from the sound recording contained in the Infringing Work from the Plaintiff in an amount to be determined at trial but no less than fifty (50%) percent of the total earnings of the Infringing Work.

**SEVENTH CAUSE OF ACTION**
**(Wrongful Conversion)**
**Against All Defendants**

131. Plaintiff repeats, re-alleges, and incorporates by reference each and every fact set forth in the preceding Paragraphs of the Complaint as if they were fully set forth herein.

132. As a result of the Defendants TRAVIS SCOTT, DON TOLIVER, SHECK WES, MIKE DEAN, CYR, and JENIUS unauthorized monetization of the sound recording contained in the Infringing Work, Plaintiff was previously and is still entitled to at least fifty (50%) percent of revenue earned from sound recording contained in the Infringing Work which was wrongfully received by Defendants TRAVIS SCOTT, DON TOLIVER, SHECK WES, MIKE DEAN, CYR, and JENIUS.

133. Since Plaintiff was completely excluded from access and possession of said funds and despite Plaintiff's numerous written requests and demands for the owed amounts, Defendants TRAVIS SCOTT, DON TOLIVER, SHECK WES, MIKE DEAN, CYR, and JENIUS knowingly, willfully, and wrongfully have previously and continue to exercise full and exclusive dominion and ownership over the funds rightfully owed to the Plaintiff as co-owners from the monetization of the Infringing Work.

134. By reason of the foregoing, the Plaintiff has been damaged by the Defendants TRAVIS SCOTT, DON TOLIVER, SHECK WES, MIKE DEAN, CYR, and JENIUS for the intentional conversion of the funds rightfully owed to Plaintiff in an amount to be

determined at trial but no less than fifty (50%) percent of the total earnings attributable to sound recording contained in the Infringing Work.

**EIGHTH CAUSE OF ACTION**
**(Declaratory Judgment)**
**Against All Defendants**

135. Plaintiff repeats, re-alleges, and incorporates by reference each and every fact set forth in the preceding Paragraphs of the Complaint as if they were fully set forth herein.

136. As set forth above, the Defendants failed to provide the Plaintiff with any owed royalties or accounting statements even after receiving several notices of material breaches.

137. Despite receiving numerous written notices and engaging in extensive email correspondence, the Defendants failed to cure or otherwise remedy any of the enumerated breaches; and instead, the Defendants filed false DMCA Counter-Notices to challenge the validity of the DMCA Takedown Notices rightfully filed by the Plaintiff to enable the Defendants to continue its ongoing infringement of the sound recording contained in the Registered Sample which is owned by the Plaintiff and which was incorporated by the Defendants into the Infringing Work without authorization or payment.

138. In addition, the Infringing Work containing the sound recording contained in the Registered Sample continues to be unlawfully monetized and exploited by the Defendants without any compensation or proper authorization from the Plaintiff including the Defendants failing to account to the Plaintiff.

139. The Plaintiff is entitled to a declaration that the Defendants are improperly withholding royalties that belong to the Plaintiff.

140. The Plaintiff is entitled to a declaration that the Defendants are improperly failing and refusing to render royalty accounting statements to the Plaintiff.

141. The Plaintiff is entitled to a declaration that Defendants have willfully infringed Plaintiff's copyrighted works in violation of the Copyright Act in violation of 17 U.S.C. §§ 106 and 501.

142. The Plaintiff is entitled to a declaration that Defendants are directly, vicariously, and/or contributorily liable for copyright infringement, as applicable.

143. The Plaintiff is entitled to a declaration that Defendants are required to account for all profits, income, receipts, or other benefits derived by the Defendants as a result of its unlawful conduct.

144. The Plaintiff is entitled to a declaration that the Plaintiff retains fifty (50%) percent of all rights to the underlying sound recording contained in the Infringing Work.

145. The Plaintiff is entitled to a declaration that the Plaintiff owns fifty (50%) percent of all rights in the sound recording contained in the Infringing Work.

146. The Plaintiff is entitled to a declaration that the Plaintiff retains fifty (50%) percent of all rights to the sound recording contained in the Infringing Work.

147. The Plaintiff is entitled to a declaration that the Plaintiff owns fifty (50%) percent of all rights to the sound recording contained in the Infringing Work.

148. The Plaintiff is entitled to a declaration enjoining the Defendants from further withholding the Plaintiff's royalties.

149. The Plaintiff is entitled to a declaration enjoining the Defendants from refusing to render royalty accounting statements to the Plaintiff.

150. The Plaintiff is entitled to a declaration enjoining the Defendants from publicly displaying the Infringing Work containing the sound recording included in the Registered Sample on any online sites, pursuant to 17 U.S.C. § 512(j).

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiff respectfully requests and prays that judgment be entered against Defendants and for the following relief as follows:

1. A declaration that:

    1. The Defendants are improperly failing and refusing to render royalty accounting statements to the Plaintiff.
    2. The Defendants have willfully infringed Plaintiff's copyrighted works in violation of the Copyright Act.
    3. The Defendants are directly, vicariously, and/or contributorily liable for copyright infringement of the Registered Sample.
    4. The Defendants are required to account for all profits, income, receipts, or other benefits derived by the Defendants as a result of its unlawful conduct.
    5. The Plaintiff retains fifty (50%) percent of all rights to the sound recording contained in the Infringing Work.
    6. The Plaintiff owns fifty (50%) percent of all rights in the sound recording contained in the Infringing Work.
    7. The Defendants are enjoined from further withholding the Plaintiff's royalties related to the sound recording contained in the Registered Sample.
    8. The Defendants are enjoined from refusing to render royalty accounting statements to the Plaintiff related to the sound recording contained in the Registered Sample.
    9. The Defendants are enjoined from publicly displaying the Infringing Work incorporating the sound recording contained in the Registered Sample on any

online sites.

2. For judgment that Defendants have violated the Copyright Act and that all such violations have been willful;

3. A permanent injunction requiring the Defendants and the Defendants' agents, employees, officers, attorneys, successors, licensees, partners, and assigns, and all persons acting in concert or participation with each and any one of them, to cease directly and indirectly infringing, and causing, enabling, facilitating, encouraging, promoting, inducing, and/or participating in the infringement of any of the Plaintiff's rights in the sound recording contained in the Registered Sample protected by the Copyright Act;

4. A permanent injunction prohibiting and restraining third-party service providers from publicly displaying the sound recording contained in the Registered Sample incorporated into the Infringing Work.

5. An award of damages pursuant to 17 U.S.C. § 504(b), including actual damages, and the profits of the Defendants, including all profits and damages directly and indirectly arising from exploitation of the sound recording contained in the Registered Sample, domestically and internationally, as well as any and all profits and damages in the following categories attributable to the infringement, including but not limited to:

    1. Record sales;
    2. Downloads
    3. Ringtones;
    4. Ringback tones;
    5. Public performance revenues and dgital audio transmissions;
    6. Digital revenue;
    7. Streaming revenue;
    8. Synchronization licensing;
    9. Merchandising;
    10. Public appearances;
    11. Endorsements;
    12. Sponsorships;

13. Spokesperson work;
14. Touring revenue;
15. Advertising revenue;
16. Appearance fees;
17. Name and likeness income and increase in value;
18. Rights of publicity income and increase in value;
19. Increased value in all Defendants' publishing and/or record company and/or companies;
20. Increased value of all Defendants' TRAVIS SCOTT, DON TOLIVER, SHECK WES, MIKE DEAN, CYR, and JENIUS' catalogues;
21. Increased value of music publishing and/or record royalties and rights;
22. Increased value of social media rights, accounts and value;
23. Increased goodwill;
24. Promotional value;
25. Increased value of royalty rate for record deals;
26. Increased value in distribution deals, negotiating power and reduction in costs;
27. Value of obtaining lower cost of administration fees and/or increased advances for publishing deals;
28. Value of obtaining better terms for record company advances and terms and multi-record deals;
29. Value of obtaining better terms of publishing and/or recorded master deals for the existing catalogue and for future works of Defendants TRAVIS SCOTT, DON TOLIVER, SHECK WES, MIKE DEAN, CYR, and JENIUS;
30. Increased value in negotiating 360 deals with record companies and/or publishers;
31. Sheet music sales and sheet folio income;
32. Any and all music publisher income;
33. Any and all record master income;
34. Any and all record income;
35. Any and all SoundExchange, BMI, ASCAP, PRS, SESAC, PPL, SOCAN, MCPS, Harry Fox Agency, and any and all collection society, mechanical society and performance society income worldwide;
36. Any and all producer royalty income;
37. Any and all arrangement income;
38. Any and all income derived from any existing medium or any medium hereinafter developed worldwide;
39. Any and all income from any new collection society and/or collection agency to be created anywhere in the world, including by the U.S. Congress under the Music Modernization Act;
40. Any and all income from any society to which any Defendant belongs or joins in the future;

41. Any and all income and/or residuals from SAG-AFTRA;
42. Any and all income from Apple, iTunes, Amazon, Spotify, Pandora, Rhapsody, and any and all download and streaming services;
43. Any and all of Defendants' equity interests in Spotify, and any other music streaming or download services or companies in which one or more Defendant has an interest, as it relates to the value from the inclusion of the Infringing Works in the service; and
44. Full payment of all royalties owed.

6. In the alternative, an award of statutory damages, pursuant to 17 U.S.C. § 504(c), in the amount of $150,000 for each act of infringement;
7. An award of compensatory and special damages, to be determined at trial;
8. An award of attorneys' fees and full costs pursuant to 17 U.S.C. § 505 and under other applicable law;
9. An award of damages for unfair competition and misappropriation in an amount to be determined at trial but no less than $250,000.00;
10. An award of damages for misrepresentation pursuant to 17 U.S.C. § 512(f), including costs and attorneys' fees in an amount to be determined at trial but no less than $250,000.00;
11. An award of damages for unjust enrichment in an amount to be determined at trial but no less than $500,000.00;
12. An award of damages for conversion in an amount to be determined at trial but no less than fifty (50%) percent of the total amounts earned;
13. For pre-judgment and post-judgment interest according to law, as applicable; and,
14. For such other and further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff respectfully demands a trial by jury as to all issues triable by jury, as enumerated and set forth in more detail in this Complaint.

Dated: New York, New York
November 17, 2026

Respectfully submitted,

**JUSTIN JACOBSON LAW, P.C.**

By: Justin M. Jacobson
Justin M. Jacobson, Esq. (JJ2022)
347 Fifth Avenue, Suite #1402-115
New York, NY 10016
Telephone: (516) 220-2911
Fax: (917) 970-2028
Email: justin@jmjesq.com

**The Royalty Law Firm PLLC**

By: Daniel Cruz Hernandez
Daniel Cruz Hernandez, Esq. (DH2178)
447 Broadway, 2nd Floor #1184
New York, NY 10013
Telephone: (914) 733-2819
Email: daniel@royaltylaw.com

*Pro Hac Vice Motion Pending*

*Attorneys for Plaintiff*
*Niv Kalisky p/k/a "Early Yellow"*